# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| DWAYNE STOVALL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CV413-118 |
| BRUCE DUNCAN, LISA BOYD, NURSE KATE, NURSE BARBARA, NURSE PHILLIPS, 3 JANE DOES, and DR. JENKINS, | ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Dwayne Stovall has filed a 42 U.S.C. § 1983 prison conditions complaint against several staff members at the Liberty County Jail. (Doc. 1.) The Court granted him leave to proceed *in forma pauperis* on the condition that he return a Prisoner Trust Account Statement form and a Consent to Collection of Fees from Trust Account form. (Doc. 3.) He has returned the two forms, so the case is ready to proceed. (Docs. 4 & 5.)

The Prison Litigation Reform Act ("PLRA") requires federal courts to conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject

to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims that are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine the complaint to determine whether it states a colorable claim for relief.

Stovall claims that jail officials have refused to provide him with allergy medication, which has led to him "to endure pain, partial breathing, continuous sneezing, swollen nasal glands, and itchy watery eyes." (Doc. 1 at 5.) He initially received some sort of allergy medication, although it is unclear what he was given. When it ran out, the nurses stated that they could not refill it absent a doctor's approval. He submitted multiple refill requests but never received his medicine. (*Id.* at 5-6.) For a time, one jail official suggested that Stovall's daughter could bring him over-the-counter medication, but Stovall claims that when she did so the medications were confiscated as prohibited. (*Id.* at

7.) After months of living in "discomfort," he finally saw Dr. Jenkins by video conference. (*Id.* at 8.) The doctor asked the nurses whether they had observed any symptoms, they denied it, and he apparently refused to approve Stovall's request for a refill. (*Id.* at 8-9.) According to Stovall, the nurses lied to Dr. Jenkins. (*Id.* at 8.) Regardless, as relief for this ongoing denial, Stovall asks for a declaratory judgment, injunctive relief, and damages. (*Id.* at 11.)

As an initial matter, Stovall has not made any allegations suggesting Administrators Duncan and Boyd contributed to his discomfort either by denying him medication (or exposing him to irritants through the jail's ventilation system -- a claim he never fully developed). Instead, he is pursuing them simply for their oversight of the jail. Claims brought pursuant to § 1983, however, cannot be based upon theories of vicarious liability or *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Rather, a plaintiff must demonstrate either that these supervisory officials directly participated in the alleged constitutional deprivations or that there is some other

3

causal connection between the acts or omissions and the alleged constitutional deprivations. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam). Such a connection may arise "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 362 F.3d at 1360 (quotations and citations omitted); *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003). Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration. . . .'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

Stovall has not offered any facts showing direct action or some other causal connection as to these defendants. While he filed grievances, which he asserts put them on notice of his discomfort, their awareness of the alleged deprivations standing alone is insufficient to state a claim against them. Filing grievances with, or sending complaining letters to, a supervisory official does not alone make the supervisor liable for the allegedly violative conduct, even if the grievance or complaint is denied. *See Wayne*, 197 F.3d at 1106; *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Prison administrators receive mountains of letters and grievances on a regular basis complaining about everything under the sun. Moreover, when the complaining person has actually been seen and treated by a medical professional, the administrators are

entitled to rely upon the medical professional's assessment. Thus, the fact that Stovall filed grievances does not establish the type of direct participation or causal connection required here. Instead, he must allege sufficient facts demonstrating that the defendants somehow caused or ratified the deprivations, not that they were generically aware of his complaints. He has not done so. Accordingly, his claims against Boyd and Duncan fail.

In order to state an Eighth Amendment claim for denial of necessary medical care against the remaining defendants, Stovall must plead facts supporting three elements. "First, a plaintiff must set forth [facts showing that he had] an objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting and citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing and explaining constitutional cause of action for Eighth Amendment medical deprivation claims); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Second, "a plaintiff must [allege] that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow*, 320 F.3d at 1243; *McElligott v. Foley*, 182 F.3d 1248,

1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). And finally, as is true in all tort actions, the plaintiff must establish that the defendant's indifference proximately caused him injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

Here, Stovall has not described any severe allergic reaction. Instead, he complains of the kind of chronic allergy symptoms millions of Americans experience and survive, often untreated, over the course of their lifetimes. Absent some allegation that he suffered severe consequences as a result of the denial of his allergy medication, he simply has not made out a serious medical need. *See Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (allergies and back pain not enough); *Murphy v. Corizon*, 2012 WL 6678907 at *1 (D. Me. Nov. 16, 2012) (no serious medical need based on allegation of food allergies); *Moilenen v. Berghuis*, 2012 WL 5499851 at *9 (W.D. Mich. Nov. 13, 2012) (suggesting that "congestion, draining sinus, and headaches" did not amount to a serious medical need).

And even if he did have a serious medical need, nothing in his complaint suggests that his allergy symptoms were so severe that the nurses were aware that he needed immediate treatment. In other words,

he has not alleged facts showing that the nurses were deliberately indifferent to any severe needs. While he insists they lied when denying his symptoms to the doctor, he has not offered facts suggesting that they were aware of any severe allergic reaction indicative of serious problems. The defendant physician, for that matter, was entitled to rely on the nurses' assessment that, to their knowledge, Stovall was not suffering severe symptoms.

At best, Stovall's claim sounds in negligence. Indeed, he states that it was their "negligence" that "caused [him] to suffer physical pain unjustifiably for months at a time." (Doc. 1 at 9.) Deliberate indifference requires a plaintiff to show "conduct that is *more* than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (emphasis added). Because Stovall has failed to make out a claim against the nurses or Dr. Jenkins, this case should be **DISMISSED**.[1]

Meanwhile, Stovall must pay the filing fee for this lawsuit. Based upon his furnished information, he owes a partial filing fee of $38.66. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's account

---

[1] Notably, Stovall has never suggested that the nurses were permitted to provide him with any medication for his ailments without physician oversight. Hence, they can hardly be said to have caused his symptoms through inaction.

8

custodian shall remit that amount to the Court and shall set aside 20 percent of all future deposits to the account and forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, plaintiff's present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of this Order.

A copy of this Order and a copy of the Consent to Collection of Fees from Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

**SO REPORTED AND RECOMMENDED** this ___11th___ day of August, 2014.

>                          /s/ G.R. Smith
> UNITED STATES MAGISTRATE JUDGE
> SOUTHERN DISTRICT OF GEORGIA